## DANIEL THOMPSON'S LESSEE v. WATSON and McINTIRE.

High Court of Errors and Appeals. June, 1821.

*Ridgely's Notebook III, 337.*

*George Read* and *Louis McLane* for the plaintiff. *Vandyke* for the defendant.

The ejectment was brought to April Term, 1814, and was. tried November Term, 1817. In this action the question seemed to turn principally on the lines and the location of the land. The cause was tried at New Castle, November Term, 1818. Watson was the tenant, McIntire the landlord. Two bills of exception were taken. . . .

THE CHANCELLOR. In this case there are two questions: first, whether the award concludes the defendants from disputing the title of the lessor of the plaintiff; and secondly, whether the survey made by Isaac Taylor, a proprietary surveyor, dated the 24th September 1713, controls or overrules the patent made by William Penn to Simon Hadley for Hadley's tract of land, dated the 25th September, 1713.

First, as to the award. The defendant, John McIntire, executed a bond to Daniel Thompson, the lessor of the plaintiff, and James Thompson, his brother, dated September 1, 1813, in the sum of $3000, with a condition underwritten, reciting that some controversy had arisen between the said parties respecting the line dividing their lands, and other matters, for which a suit had

been instituted by the aforesaid Dr. Thompson against the said John McIntire, the whole of which the parties had amicably submitted to the decision, settlement and final determination of Isaac Dixon, Richard Buckingham, Andrew Gray, William Foulk and Joseph Ball, then, that if the above bounden John McIntire, his heirs, executors and administrators shall and do well and truly stand to, abide by, perform, fulfil and keep the award, order, arbitrament, final end and determination of the said Isaac Dixon, Richard Buckingham, Andrew Gray, William Foulk and Joseph Ball aforesaid or a majority of them (provided that the said award, order, or final end and determination of the said referees be made under their hands and seals and ready to be delivered to the parties on or before the 25th of the said month of September) then the said obligation to be void. Four of the arbitrators made an award in writing under their hands and seals, dated the 24th September, 1813, and ordered that the division line should run in the straight direction of a certain marked hickory standing in the line of John Walker's and Jesse Owen's lands, and a certain marked black oak, fallen and blocked, on the line of lands of the said John McIntire and Daniel Thompson, as represented on the plot annexed to the award. They also awarded that McIntire, the defendant, should pay to Daniel Thompson, the lessor of plaintiff, $11 for his damages which he had wrongfully sustained by the said John McIntire for timber. This line passed entirely the lands of John McIntire and Daniel Thompson where they joined, and extended through the lands of James Thompson and J. McIntire, so far as they adjoined, and established a division line between the Thompson's and McIntire. It includes about 1¾ acres of land held by John McIntire, the defendant, and claimed in this action by Daniel Thompson, the lessor of the plaintiff.

First, whether the award concludes the defendant McIntire from disputing the title of the lessor of the plaintiff and controverting the line so established. This is the first case in which this point has arisen in this state. The counsel for the plaintiff in error cited: 3 East 15; Kyd Aw. 55; 1 Bac.Abr. 239, title "Arbitrament" K (Wilson's Edition of Gwilliam's Bacon); 1 Wils. 122; 2 Wils. 148; 2 Johns. 62, 63; 3 Johns. 367;—to prove that the award is conclusive, and that whether the party claiming under it sought to recover the penalty or to enforce the award by an action of ejectment for the recovery of the land awarded, it could not be invalidated in a court of law, and could be impeached in a court of chancery only. In an action of debt on a bond to perform an award, nothing *dehors* the award can be given in evidence to impeach it, such as partiality or corruption

in the arbitrators; and the only remedy the party can have must be sought in a court of equity. The cases cited fully come up to this point, and from the reason of the thing the award should be conclusive on the party, so far as to entitle the other party to a recovery on the bond for the non-performance of it. The bond fairly becomes forfeited by a breach of the condition; and to suffer the party to question the award on a suit on the bond would be a death-blow to arbitrations at common law, and would make a man's contract of no avail. Somehow, they should be enforced, and the regular and proper and well known method is by a suit on the bond.

In England, it seems to be settled by the case of *Doe, on the demise of Morris et al., v. Rosser,* 3 East 15, in an action of ejectment, that though an award cannot have the operation of conveying the land, yet that by the agreement of the parties to make it conclusive as to the right to land in controversy, it is sufficient to bind them in the action of ejectment. This is the first decision there which has given such an effect to an award at common law. If it concludes the right to the land, or, which is the same thing, if it binds the party in an action of ejectment so that he cannot controvert it, it is equal to a conveyance of the land and more effectual than a verdict and judgment in an action of ejectment.

In the case of *Trusloe against Yewer,* Cro.Eliz. 223, 2 Leon. 104, there is a curious distinction in a controversy concerning a lease for years. An award that one of them should have the land was held to be a good gift of the interest of the land or of the interest of the term; that is, that the whole lease or interest in the land for the term then to come belonged to one exclusive of the other; but if the award had been that one should permit the other to enjoy the term, this would not have given the interest in the land, nor would amount to a lease. The author of Bacon's Abridgment (3 Bac.Abr. 421, title "Leases and Terms for Years," K) explains this case thus:

> "Because the Permission being to come from the other Party, the Interest must be supposed to be and continue in him; and it could not amount to a Lease, or an Award of a Lease; not to a Lease, either from the Arbitrator or the other; not from the Arbitrator, because he had nothing in the Land, and was only to award what the other should do; not to a Lease from the other, because it was only the Act and Award of the Arbitrator; neither could it amount to an Award of a Lease from the other, because it was only that he should permit the other to enjoy the Term, which he might do without making a Lease; and

the Words being spoken by the Arbitrator, who was a third Person, cannot have the same Operation, as if they had been spoken by one who had Interest in the Lands to another, but must be taken according to the literal Sense and Meaning. . . ."

The distinction here is in words only. An award that one of the parties should have the land; and an award that one of the parties should permit the other to enjoy the term, would end precisely in the same thing; for if the award in both cases were to take effect according to the intention of the arbitrator, the land would be enjoyed by the one to whom the arbitrator awarded it; that is, by him [by] whom the arbitrator intended the beneficial interest in the land should be enjoyed. In Dyer 182b, in a note, this case of *Trusloe against Yewer* is cited and seems to be approved. And there, where *baron et feme* possessed of a term in right of the *feme* executrix, it is said, a submission by the husband of the title and interest in the term would bind the *feme* as much as if the husband had granted the term; but if the arbitrators had awarded that the possessor should hold the term, that would not bind the right of the other, for their arbitration does not extinguish the right then, as it does, to pass the possession. These were cases of terms for years and may be distinguished from estates in fee simple by not requiring the same solemnities in passing from one to another, but even in them the award would not extinguish the right.

In *Marks v. Marriot*, 1 Ld.Raym. 114, which was an action of debt on a bond conditioned to perform an award, Treby, C. J., said that things in the realty might be submitted, as well as things in the personalty; but they could not be recovered upon the award. And Kyd, in his treatise on awards (Kyd Aw. 62), says that since the Statute of Frauds such an award would not be sufficient to bind the parties; but that it must order a transfer of the possession or a release of the right by a written instrument. *Vide* Doct.Pl. 97. Thus it appears that an award cannot pass an estate from one to another; and most clearly the Statute of Frauds, and our Act of Assembly (1 Del.Laws 328) do not countenance such an opinion, but are directly adverse to it. If the award can have any such effect, it must be by an act to be done in obedience to an award.

But it has not been contended that the award operates as a conveyance of the land, nor that it vests any right or title to the land in Daniel Thompson, the lessor of the plaintiff, but merely that it concludes McIntire from setting up any title to the land in opposition to the decision of the arbitrators. The case in East

[3 East 15] supports the argument of the plaintiff's counsel; but that case seems to me to be contrary to former opinions and to the general principles of the law. I have referred to Lord Chief Justice Treby's opinion. It is, though, on the footing of the agreement of the party that the award of the arbitrators should be conclusive as to the right to the land in controversy, that the party is to be barred or precluded from disputing the title of the lessor of the plaintiff. If the agreement can have such an operation at law, it would be a case peculiarly fitted for equity jurisdiction; but in the case of *Thompson v. Noel et al.,* 1 Atk. 60, Lord Hardwicke says that a bill to carry an award into execution, when there is no acquiescence in it by the parties to the submission or agreement by them afterwards to have it executed, would certainly not lie, but the remedy to enforce a performance of the award must be taken at law; that is, as I understand, by a suit on the bond, or by such other mode as will correspond with the form of submission. And in 1 Eq. Cas.Abr. 51 pl. 9, *Bishop and Webster,* a bill was exhibited to an execution of an award, which was performed by neither party. The defendant demurred because there was no precedent that a court of equity had ever carried such awards into execution; and the demurrer was allowed. In the case of *Norton v. Mascall,* 2 Vern. 24, where one party had sold land to raise money to be paid under an award, and the other party had intimated that he would receive it, though the award was extrajudicial and not good in strictness of law, it was decreed to be specifically performed, not because the award of itself could be enforced, but because the party had intimated that he would receive the money, and thereby agreed to the award and induced the other party to sell land to enable him to perform it. So in *Hall v. Hardy,* 3 P.Wms. 187, in a dispute about the fee simple of a small parcel of land, on a submission to arbitration, two sums of money, £10 and £30, were ordered to be paid on different days by one of the parties, and that the other should join in a fine and deed of uses and thereby convey the premises to the plaintiff. The £10 were paid, and the £30 tendered. On a bill for the specific performance of the award, it was so decreed because the defendant by his acceptance of part of the money had undertaken specifically to perform it; but without that circumstance it would not have been decreed.

Upon a voluntary submission to arbitrators, without the interposition of a court of equity, and without any acquiescence or agreement by the parties to have it executed, a bill will not lie in a court of chancery for a specific performance. I speak here of awards that are good and made according to the sub-

mission, and where there is a remedy by a suit at law. (*Vide* 1 Ves.Sr. 450, Pow.Con. 318.)

If the award does not operate as a conveyance, if it vests no title to the land in controversy in Thompson, the lessor of the plaintiff, if it does not extinguish the right or title of the defendant, if any he has, if a court of chancery would not compel a specific execution of it, I cannot perceive the principle upon which it can be enforced in a court of law in an action of ejectment. If the award could be enforced by an action of ejectment, then a court of law would do more in compelling the performance of it by the defendant than could be obtained in equity; and the award would be more effectual than a verdict and judgment. At common law every covenant and agreement was personal where there was no proper conveyance to transfer the right of the thing itself; and being only a personal agreement, when it was broken, the party could only recover damages. This remedy in all instances was not complete, therefore a court of equity interposed. Gilb.Cas. 235, 3 Bl.Comm. 438, 1 Madd.Ch. 286. A court of equity, where a man bargains to do a thing, in conscience and justice looks upon it as already done, therefore their decree is not only *in personam,* but *in rem* and binds the right of the thing; but a court of law acts only *in personam.* A court of equity has a discretion in such cases, not arbitrary and capricious, but a regulated and judicial discretion governed by established rules of equity. 3 Bl.Comm. 432, 1 Madd.Ch. 287. A court of equity can impose terms; a court of law cannot. If the party be entitled to a verdict, the law must take its course. 5 Term 690. *Vide* 5 Ves.Jr. 517. It is admissible on the part of defendant to show circumstances, *dehors,* independent of the writing, to make it inequitable for the purpose of a specific performance, 1 Madd.Ch. 322; but in a court of law nothing *dehors* the award, or a suit on the bond of submission, can be given in evidence to affect it. 2 Wils. 148.

Can these rules apply to an action of ejectment to enforce the award? And yet they certainly ought; for if a court of common law jurisdiction assumes the jurisdiction of a court of equity and undertakes to enforce an award specifically because of the agreement of the party to perform it, all the rules of a court of equity should be applied to the case, and the defendant should be allowed to show circumstances *dehors,* independent of the award, as in all cases in equity where the aid of that court is sought for the enforcement of agreements. If there are acts to be performed by each party, many difficulties will arise in going incidentally into a specific execution of the award; but in a suit at law on the submission bond the pleadings will develop the

whole case and give notice of the facts to be proved and the points in issue between the parties. All these appear to be strong objections against compelling the performance of an award by an action of ejectment.

Again, an action of ejectment is a possessory remedy and only competent where the lessor of the plaintiff may enter; therefore it is always necessary for the plaintiff to show that his lessor had a right to enter, by proving a possession within twenty years or accounting for the want of it under some of the exceptions allowed by the Act of Assembly. Twenty years adverse possession is a positive title to the defendant. It is not a bar to the action or remedy of the plaintiff only, but takes away his right of possession. 1 Burr. 119. This is the doctrine of Lord Mansfield and of all other judges. And our Act of Assembly, 2 Del.Laws 1156, takes away the right of entry, but within twenty years next after the party's right or title first descended or accrued; and also the writ of right, and all actions real, personal or mixed, and all prescriptions or claims to or in any lands, without an actual seisin or possession of him or his ancestors or predecessor of the premises sued for or claimed, within twenty years next before such writ or action brought. If then Thompson, the lessor of the plaintiff, has not had the actual seisin or possession of this land within twenty years next before the action brought, how can this submission and award entitle him to recover in this action? The award gives no title, it conveys no right and transfers no possession; and yet, if it were conclusive against the defendant, it would enable the plaintiff to recover against the express provision of the Act of Assembly. If the award were to conclude the defendant so as to bar him from making any defense in this action, still it would not transfer such a seisin or possession to the lessor of the plaintiff that the plaintiff could recover without an actual seisin or possession within twenty years. As it could not operate as a conveyance of any right or title from McIntire to Thompson, the plaintiff could not claim under McIntire's possession within twenty years as his predecessor; and consequently the want of an actual seisin or possession could not be supplied by the award. And if I supposed that the award barred the defendant from impeaching or controverting it, yet I should not think it decisive of the right of the plaintiff to recover in this action. At the utmost, the award could only repel the defense of the defendant; it could not affirmatively give a right of entry and a right to recover the possession, without an actual seisin or possession.

In Pennsylvania this question has been agitated, but has never perhaps received a solemn decision. On the last occasion, at *nisi*

*prius* in May, 1798, Chief Justice McKean and Mr. Justice Smith held that such an award was not binding. See *Dixon's Lessee v. Morehead,* Add. 216, cited in a note to Kyd Aw. 63.

Great respect is certainly due to the decision in East [3 East 15], but as that case seems to me to be at variance with the general doctrine on the subject of awards, and as it is not an authority, I must decide upon my own light and my own understanding. If I am mistaken, it does not happen from negligence. I have examined the point with diligence and attention, and from the best consideration I can give it, my opinion is that the Supreme Court did not err in allowing the defendant to controvert the award.

Second, as to the survey. In the charge of the Court the Chief Justice directed the jury thus:

> "And so the question about the said boundary remaining to be considered, whether the north and south line of the Hadley patent contains two courses or only one, it appears that there is a variance between the survey and the patent of the Hadley tract in this, that the survey represents the disputed boundary as containing two lines, and the patent describes the same as consisting of but one line. And we have no hesitation in directing you, and giving it as our opinion, that, according to the evidence in this cause, if the same be believed by the jury, the survey which is anterior in date should control the patent. And that if the said land in dispute should be believed by the jury not to be included within the bounds of the said survey, or it should be believed by the jury that the defendants and those under whom they claim have had twenty years adverse possession thereof uninterruptedly before the time of the bringing the said action of ejectment, it will bar the plaintiff's right of recovery therein, notwithstanding that the controversy arises between the parties in this action about the true location of the common boundary line between their respective adjoining tracts, and the submission of the parties to arbitration relative to this matter in controversy would not prevent the operation of the Act of Limitations to bar the right of the plaintiff to recover in this action."

The survey and the patent were made for the same person and are for the same parcel of land, except that the two lines include the land in controversy, and the line of the patent does not. There was no evidence given at the trial to impeach the patent, or to question the fairness of its execution. It is a genuine authentic deed made by William Penn, by his attorneys, for

conveying to Simon Hadley the tract or parcel of land contained within the metes and bounds therein mentioned.

The survey was made for the purpose of designating a particular parcel of land to be granted to the patentee. It was designed merely to ascertain and separate the land to be granted from other land of the grantor or of other grantees, and it was liable to the control of the grantor and grantee, and might be altered and corrected by them. It is true that a Land Office being erected for the sale of vacant lands, and rules established by which such sales were conducted, a compliance with those rules, or even with the customs of the Office, would give to the party a right to the land appropriated to him by a warrant and survey, but the moment the patent was executed the survey became *functus officio;* the grant was completed, and the grantor was invested with a complete legal title. The patent executed the contract created by the warrant and survey, and fixed and established the terms and conditions between the grantor and grantee. The case, though, is not so strong as if the survey were supported by a warrant. The survey by itself ought to have, and could have no effect. If it stands *per se,* then it is an unauthorized act; and although made by a surveyor of the Proprietary, yet without a warrant it was not valid. A warrant might be presumed, but that is not the question. Neither was it the question with the jury; but the survey alone without any warrant was opposed to the patent, and was ruled, according to the evidence in the cause, to invalidate or control the patent in respect to the lines in which the survey and patent vary.

A warrant and survey without a patent, and a warrant alone where the land has been sufficiently designated and located in the warrant, have been deemed sufficient evidence of a grant; but when the Proprietary has acted upon any warrant and survey and issued a patent thereon, the patent supersedes the warrant and survey in relation to the warrantee and patentee, the same person being both, just as a judgment recovered on a bond extinguishes the bond. When the warrant and survey are adverse to a patent, that is, where they have been granted to different persons, and distinct opposing titles are set up under them, the right or title to the land will depend on the priority of the grant, the warrant and survey being considered as a grant. The Act of Assembly passed February 7, 1794 (2 Del. Laws 1174) has sanctioned and confirmed the practice that prevailed in our courts before and since the Revolution, and provided for those who legally claim lands under any warrant or grant issued or made before January 1, 1760, for which lands no patent has yet issued, a mode of completing their titles by

obtaining a patent; but in this case no patent could be obtained under that Act, because a patent had been issued, and the title was thereby completed.

I do not understand the court, though, in this direction to the jury, as laying down the law generally, that this survey should control the patent merely because it was anterior in date, but according to the evidence in the cause, if it were believed by the jury. This narrows down the question to the particular case and facts that were then before the court and jury. But I am so unfortunate, if there were any evidence that did or could operate on the survey or on the patent, so that the survey should control it, as not to perceive it, nor to be able to give the same effect to it which the court below did. The patent at its date either controlled the survey, and was superior to, and superseded it, or did not. No subsequent facts or circumstances could operate upon these instruments. The proof given of the possession did not, for however that the possession might be strengthened by length of time, yet it could not refer back and destroy an instrument which was valid at its date.

These papers depended on their own intrinsic efficacy at their dates, and could not be affected by any subsequent events. If the patent on September 25, 1713, completed the title to Simon Hadley, as I think it did, nothing afterwards could so operate as to give any superior or controlling effect to the survey. There is not proof nor allegation of any fraud, imposition or mistake in obtaining the patent; and to presume a mistake because the patent and this survey differ would be a rash presumption, not to be respected in law. There must have been a survey returned before the patent issued, and that should have been produced before any ground of presumption of mistake could be laid. This is not an office paper and is not the best evidence of the survey, unless it be shown that the survey was lost and could not be found. I repeat that a survey must have been returned before the patent issued, unless this patent originated in a manner different from the common course of granting patents, and of that there is no evidence in this cause. The parties to the patent must certainly have seen and known that it differed from the lines of the survey, if they acted upon this survey; and although it cannot now be accounted for, yet the parties no doubt had good reason for the change. If this patent could be controlled by this survey found among the title papers of the defendant McIntire, and not appearing to have been returned to the office, although accompanied with possession, I cannot conceive what effect a patent can have, or what security it can give in any case. It is certain that a patent cannot operate

against an older warrant and survey, by which a title is set up adverse to the patent by one claiming against the patent; and if it has not a conclusive effect as to the patentee and those claiming under him, it will amount to nothing.

The court placed the case on the alternative, that if the land in dispute should be believed by the jury not to be included within the bounds of the survey, or it should be believed by the jury that the defendants and those under whom they claim have had twenty years adverse possession thereof uninterruptedly before the time of bringing the said action of ejectment, it will bar the plaintiff's right of recovery therein, notwithstanding that the controversy arises between the parties in this action about the true location of the common boundary line between their respective adjoining tracts; and the submission of the parties to arbitration relative to this matter in controversy would not prevent the operation of the Act of Limitations to bar the right of the plaintiff to recover in this action. Now this is giving full effect to the survey, entirely overruling the patent, and making the paper title of the defendant, as to the location of the lines, depend exclusively on the survey; which, I think, was erroneous, for the defendant's paper title could not extend beyond the limits mentioned in the patent. But as to the charge related to the Act of Limitations, it was right as I have before mentioned. Inasmuch then as the jury might have supposed from the direction of the court that the lines in the patent must give way and be controlled by the survey, and as they might not have found for the defendant without this direction, there is error in the charge, and the judgment should be reversed.

WARNER, COOPER and BATSON concurred. Opinion unanimous. Delivered October 20, 1821 at an adjourned court.

---

NOTE (made November 25, 1827). See the case, *Bouck v. Wilber,* 4 Johns.Ch. 405, where the Court of Chancery in New York corrected a mistake of an extrajudicial nature in an award, and decreed a performance of it in specie. In 1 Swans. 43, *Wood v. Griffith,* that a bill will lie for the specific performance of an award, because the award supposes an agreement between the parties, and contains no more than the terms of the agreement ascertained by a third person. See I Dall. 304, *Smallwood v. Mercer,* 1 Wash. 290.